AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico
Erik Paltrow
Clerk of Court

United States of America
v.
Shawn SHOATS

*Defendant(s)*

Case No. MJ 26-5784 JMR

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of June 22, 2026 in the county of Bernalillo in the District of New Mexico, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a) & (b)(1)(A)(viii); 843(b); 18 U.S.C. § 2 | Possession with Intent to Distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers; use of a communication facility to further the commission of a felony-controlled substance offense; Aiding and Abetting. |

This criminal complaint is based on these facts:

See attached affidavit, prepared by DEA SA Jennifer T. Hernandez.

☑ Continued on the attached sheet.

Jennifer T Hernandez
*Complainant's signature*

DEA SA Jennifer T. Hernandez.
*Printed name and title*

Telephonically sworn and electronically signed.

Date: 10/28/2026

Jennifer M. Rozzoni
*Judge's signature*

City and state: Albuquerque, NM

Jennifer M. Rozzoni, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Jennifer T. Hernandez, Special Agent ("SA") of the Drug Enforcement Administration ("DEA"), being duly sworn, depose and state as follows:

INTRODUCTION

1. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) and have been employed since August 2023. I am currently assigned to the Albuquerque District Office (ADO), charged with investigating drug trafficking and money laundering violations under Titles 18 and 21 of the United States Code.

2. I have received 16 weeks of specialized training in Quantico, Virginia, pertaining to drug trafficking, money laundering, undercover operations, and electronic and physical surveillance procedures, confidential source operations, criminal law, and investigations involving federal electronic surveillance statutes, to include Title III wiretaps, drug identification, search warrants, and vehicle stops.

3. My experience as a Special Agent includes, but is not limited to, conducting electronic and mobile surveillance, executing search warrants, handling and processing evidence, undercover operations, writing reports, managing cases, monitoring Title III interceptions, authoring T-III applications, working related investigations, and corresponding with Assistant United States Attorneys (AUSAs) and judges. I have participated in investigations involving purchases from suspected drug traffickers using both undercover operatives and confidential sources. I have spoken to, and regularly work with, other law enforcement officers with similar experience. I also have experience in analyzing and interpreting drug codes and cryptic dialogue used by drug traffickers.

4. As a result of my training and experience, I am familiar with how various drugs are

ingested and the typical distribution and trafficking methods used by drug dealers and traffickers. In addition, I am also familiar with the typical methods used by traffickers to "courier" and clandestinely transport controlled substance through airports and by common carriers such as the U.S. Mail, small parcel carriers, and freight services. I am familiar with the communication methods drug traffickers use, including common patterns of telephonic phone communication between drug traffickers, their sources of supply, and their customers.

5. I have been involved in an ongoing investigation regarding the distribution of controlled substances, specifically fentanyl and methamphetamine by an organization whose members include Shawn SHOATS, and others known and unknown individuals (collectively, the SUBJECTS). Since the investigation's interception, I, as well as other Special Agents and Task Force Officers with DEA and the Internal Revenue Service (IRS), and law enforcement officials from other agencies, have obtained information regarding the illegal drug trafficking of these SUBJECTS and others.

6. I know the facts set forth in this affidavit because of my investigation and interviews with other agents and law enforcement officers. These are not all the facts known to me throughout the course of this investigation, but rather only those that are essential to establish probable cause for charging a complaint against Shawn SHOATS (hereinafter referred to as ("SHOATS") for the federal violation(s) listed herein.

7. This affidavit is made in support of the insurance of a Criminal Complaint charging SHOATS with violations of:

i. 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(viii) and 18 U.S.C. § 2, that being distribution of 500 grams or more of a mixture or substance containing a

detectable amount of methamphetamine, its salts, isomers, or salts of its isomers; and 18 U.S.C. § 2, that being aiding and abetting the same;

ii. 21 U.S.C. § 843(b), that being use of a communication facility to further the commission of a felony-controlled substance offense.

**STATEMENT OF PROBABLE CAUSE**

8. The DEA is conducting an investigation into a drug trafficking organization ("DTO") that imports various narcotics into New Mexico, specifically Albuquerque.

9. On June 22, 2026, an APD undercover Narcotic Detective was successful in purchasing approximately two pounds of methamphetamine from Shawn SHOATS.

10. On June 15, 2026, an Albuquerque Police Department (APD) Central Narcotics Undercover Officer contacted Shawn SHOATS via Facebook Messenger. SHOATS did not respond to the APD UC.

11. On June 16, 2026, SHOATS reached out to the APD UC to coordinate the sale of methamphetamine. SHOATS agreed to sell two pounds of methamphetamine on June 22, 2026. On this date, members of the Central Narcotics Units established surveillance in and around the area of SHOATS's residence. Prior to conducting the narcotics deal with SHOATS, SHOATS sent the APD UC the address for his own residence as the location of the deal.

12. Once the APD UC arrived at SHOATS's residence, SHOATS exited his residence, greeted the APD UC and both the APD UC and SHOATS entered SHOATS's residence . SHOATS told the APD UC that they needed to go to the source of supply for the methamphetamine. While inside SHOATS's residence, SHOATS placed a call to his source of supply then placed the telephone on speakerphone allowing the APD UC to over hear the conversation. SHOATS stated he had $10,500 which then the source of supply replied he had ten

pounds of methamphetamine for SHOATS. SHOATS advised that the APD UC and SHOATS would depart to the source of supply location to acquire the methamphetamine.

13. Prior to departing to the source of supply, SHOATS advised to the APD UC that he needed to get ready, a few moment later SHOATS invited the APD UC into his bedroom. While inside SHOATS bedroom SHOATS showed the APD UC a quantity of suspected methamphetamine and stated, "this is what you will be getting". Based on the training and experience of the APD UC, believed the substance to be methamphetamine, the APD UC also estimated the amount to be one pound of methamphetamine based on this observation. The weight of the methamphetamine observed by the APD UC was never confirmed.

14. After showing the suspected methamphetamine to the APD UC, SHOATS and the APD UC departed SHOATS's residence and went to meet the source of supply. SHOATS met with the source of supply and acquired a quantity of methamphetamine. After acquiring the methamphetamine, SHOATS provided the APD UC with approximately two pounds of methamphetamine in exchange for $3,000 of official funds as agreed. The suspected methamphetamine was field tested and returned with a presumptive positive for methamphetamine and weighed approximately 907.9 grams.

15. All of the events described above occurred in Bernalillo County, in the District of New Mexico.

## CONCLUSION

Based on the aforementioned information, there is probable cause to believe that on or about June 22, 2026, SHOATS committed a violation of:

1. 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(viii) and 18 U.S.C. § 2, that being distribution of 500 grams or more of a mixture or substance containing a detectable amount of

methamphetamine, its salts, isomers, or salts of its isomers; and 18 U.S.C. § 2, that being aiding and abetting the same;

2. 21 U.S.C. § 843(b), that being use of a communication facility to further the commission of a felony-controlled substance offense.

I declare under the penalty and perjury that the foregoing is true and correct to the best of my knowledge.

Jennifer T Hernandez

Jennifer T. Hernandez
Special Agent
U.S. Drug Enforcement Administration
Albuquerque District Office

Electronically submitted to me and telephonically sworn on this 28th day of October 2026:

Jennifer M. Rozzoni

Jennifer M. Rozzoni, United States Magistrate Judge
District of New Mexico
Albuquerque, New Mexico